# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT T. WENGLICKI,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 07-4522** |
| | : | |
| **TRIBECA LENDING CORP., et al.,** | : | |
| **Defendants** | : | |

## M E M O R A N D U M

**STENGEL, J.**                                                       **July 22, 2009**

## I. INTRODUCTION

Wenglicki brought eleven (11) counts against the three defendants in the amended complaint he filed on December 4, 2008 (Document #37). He withdrew two counts, Count VII (FCEUA as to Tribeca and Franklin) and Count IX (negligence as to Avaya) in his response to the defendants' motions to dismiss. I will dismiss the three remaining counts against defendant Avaya (Counts V, VI, and X) and enter judgment in its favor because Wenglicki has failed to state a claim against Avaya. I will dismiss all counts against Tribeca except Count IV, but I will decline to exercise jurisdiction over this state-law claim.

## II. FACTS

Wenglicki was terminated by his employer, Avaya on May 1, 2005. Compl. ¶ 13. He accepted a lump-sum severance payment of $50,000 and was granted three years of "recall rights" (the right of first refusal for a new position, should one become available).

Compl. ¶¶ 14, 15.  In October 2005, Avaya offered Wenglicki a new position.  Compl. ¶ 17. When he accepted the new position, Wenglicki was required to give back a portion of his severance payment ($18,400) and to spend two months in Florida for training. Compl. ¶¶ 17, 19.  If he had refused the job, Wenglicki would have simply forfeited the remaining time (approximately two and a half years) of recall rights. Compl. ¶ 21.  He would have been permitted to keep the full severance payment amount.

Although Wenglicki had apparently already disposed of the $50,000 of severance money, he accepted Avaya's offer and refinanced his home mortgage through Tribeca, a mortgage broker and lender, to get the "pay-back" money for Avaya.  See Compl. ¶ 23. On October 29, 2005, Wenglicki executed the loan documents at closing.  Compl. ¶ 30.

Wenglicki believed (because Ike Stevens at Tribeca allegedly told him) that Tribeca and Franklin would consolidate his debt and pay off both of his mortgages, taxes and car payment, in addition to giving him cash to repay Avaya.  Compl. ¶ 26.  According to Wenglicki, Stevens told him that a title search showed no second mortgage on his home and that the loan would improve his financial condition.  Compl. ¶¶ 27, 29. Stevens misrepresented that the loan would improve Wenglicki's financial situation, that the fees and costs charged him were customary, part of the finance charge and amount financed, that the loan would continue its characteristics and that certain amounts were due and owing.  Id.

It was not until later that Wenglicki learned his second mortgage, taxes and car

payments were unpaid.  Compl. ¶¶ 31, 32.   Also, his monthly payment was higher.  Id.

Wenglicki did have enough cash to pay back Avaya and his get job back, but he

"eventually learn[ed] that Avaya had intentionally created an impossible financial

situation due to its financial needs so to recoup [his] severance under the guise of

employing" him.  Compl. ¶ 32.  After two months of Avaya training in Florida, Avaya

temporarily relocated him to Tennessee, but did not pay him the relocation reimbursement

it paid other employees because Wenglicki was a "new hire."  Compl. ¶ 33.  When the

temporary, three-month relocation turned into a ten-month relocation, Avaya advised

Wenglicki to apply for a hardship transfer which was denied.  Compl. ¶ 36.  Avaya then

advised Wenglicki to file for bankruptcy.  Id.

In April 2006, defendant Franklin, Wenglicki's lender and servicer or then-

assignee, instituted a mortgage foreclosure action. Compl. ¶ 37.  On March 7, 2008,

Wenglicki filed bankruptcy.  Compl. ¶ 38.  See Bankr. E.D.Pa. 08-20480.  Wenglicki's

car was repossessed, his home was sold at sheriff's sale and he became homeless.  Compl.

¶ 39.  He alleges that he has suffered emotional distress, credit rating damage, financial

loss including lost wages and opportunities, annoyance inconvenience and embarrassment

and other things that he plans to determine during discovery.  Compl. ¶ 41.

## III. DISCUSSION[1]

### A. Claims against Avaya

### i. Count V: Fraud

Wenglicki fails to plead even the most basic elements of a fraud claim. In Pennsylvania, fraud consists of five elements: (1) misrepresentation, (2) fraudulent utterance thereof, (3) maker's intention that the recipient will be induced to act, (4) justifiable reliance by recipient on misrepresentation, and (5) damage to the recipient as a proximate result. New York State Elec. & Gas v. Westinghouse Elec. Corp., 387 Pa. Super. 537, 554 (1989) (internal citation omitted). Wenglicki alleges only:

> 62. Defendants misrepresented and/or omitted material facts to Plaintiff, including the aforesaid (incorporated herein by reference) and as more further described as following but not limited to: (a) that the re-employment was beneficial to Plaintiff, when it was not; (b) that Plaintiff would be hired with his previous seniority, when he was not, and (c) that his re-employ would be to his financial benefit, which it was not.
>
> 63. The aforesaid misrepresentations and/or omissions were made in an attempt to procure monetary consideration from Plaintiff, and/or otherwise from Plaintiff's re-employment.

---

[1] In Bell Atlantic Corp. v. Twombly, 530 U.S. 544 (2007), the Supreme Court recently "rejected language that long had formed part of the rule 12(b)(6) standard, namely the statement in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that a complaint may not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). In Phillips the Third Circuit explained that "Rule 8(a)(2) requires a showing rather than a blanket assertion of an entitlement to relief . . .a claimant cannot satisfy the requirement that he or she provide not only the 'fair notice,' but also the 'grounds' on which the claim rests." Id. at 15 (quoting Twombly, 127 S.Ct. at 1969 n. 8). Therefore, "wholly conclusory" statements are not sufficient. Id.

64. As the intended result of the aforesaid fraud, Plaintiff reasonably relied upon said misrepresentations and/or omissions to his detriment. Compl. ¶¶ 62-64.

Essentially, Wenglicki's claim is that Avaya misrepresented that he would benefit by accepting its job offer. These allegations are not even sufficient under Twombly / Phillips and F.R.C.P. 8(a)(2). Therefore, the allegations fall far short of F.R.C.P. 9(b)'s requirement that "a party must state with particularity the circumstances constituting fraud or mistake." Wenglicki has not stated "the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). He has not "allege[d] the date, time or place of the alleged fraud or otherwise inject[ed] precision or some measure of substantiation into a fraud allegation." Id. He has not alleged "who made the misrepresentation to whom" nor "the general content of the misrepresentation." Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004). He has not shown any connection between the alleged misrepresentation and his damages. He has "simply point[ed] to a bad result and allege[d] fraud." Permenter v. Crown Cork & Seal Co., 38 F.Supp.2d 372, 382 (E.D. Pa. 1999).

Further, Wenglicki states that Avaya was his employer, but he does not allege that Avaya failed to pay him the wages he earned. Even if Wenglicki's statement is to be believed and it is true that Avaya represented that re-employment would be financially beneficial, this vague allegation does not constitute a fraudulent misrepresentation. Leo v.

5

State Farm Mutual Auto Insurance Co., 939 F.Supp. 1186, 1194-95 (E.D. Pa. 1996) ("a question of opinion . . . could not constitute a misrepresentation").  For these reasons, Wenglicki's fraud claim against Avaya should be dismissed.[2]

### ii. Count VI: Breach of Contract / Warranty

There was no contract with Avaya, therefore Wenglicki has no claim for breach. In Pennsylvania, a breach of contract claim has three elements: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages."  In re American Investors Life Ins. Co. Annuity Mktg. & Sales Litig. No. 04-2535, 2007 WL 2541216, 33 (E.D. Pa. Aug. 29, 2007) (quoting Omicron Sys., Inc. v. Weiner, 860 A.2d 554, 564 (Pa. Super. Ct. 2004).  Wenglicki's assertions do not describe the agreement allegedly breached, the number of parties to that agreement, nor whether there was more than one agreement.  He does not allege whether Avaya is a third-party beneficiary of the contract or how Avaya breached the agreement.  He fails to allege the nature or amount of damages or how the breach caused those damages.  There is no allegation of mutuality or exchange of any consideration.  He does not even allege what the breach consisted of.

From the few, vague allegations in the complaint, the little that can be gleaned suggests that Wenglicki's claim arises out of his employment at Avaya.  In Pennsylvania,

---

[2]This is Wenglicki's second attempt to plead fraud against Avaya.  This case was filed almost two years ago (stayed temporarily) and the complaint has been amended once.  This claim will be dismissed *with prejudice* because any attempt by Wenglicki to to amend his complaint and re-plead this claim would be futile.

however, "employment relationships presumptively are at will." <u>Haberern v. Kaupp</u>

<u>Vascular Surgeons Ltd. Defined Benefit Pension Plan</u>, 24 F.3d 1491, 1497 (3d Cir. 1994).

Wenglicki attempts to allege that his new position was less remunerative than his

previous position and that he was never paid the relocation allowance he was owed. Even

if these facts are true, they do not give rise to a breach of contract claim because "if an

employer may terminate an employee without cause . . . it has the right to decrease h[is]

compensation, as this constitutes a more modest change in the employment relationship."

<u>Id.</u> Therefore, even construing the facts alleged as generously as possible to Wenglicki, it

is clear that he has no claim against Avaya for breach of contract or warranty.

### iii. Count X: Breach of Covenant of Good Faith & Fair Dealing

The covenant of good faith and fair dealing cannot be a relevant claim in a case

where Wenglicki is Avaya's at-will employee. <u>Engstrom v. John Nuveen & Co.</u>, 668

F.Supp. 953, 958 (E.D. Pa. 1987) ("There is no claim under Pennsylvania law for breach

of a duty of good faith and fair dealing where the employment relationship is at-will").

When an employment contract is at issue, "Pennsylvania law does not recognize a cause

of action for breach of the implied covenant of good faith and fair dealing which is

separate from a breach of contract action." <u>McGrenaghan v. St. Denis School</u>, 979

F.Supp. 323, 328 (E.D.Pa. 1997).

In any case, this claim cannot survive because it falls far short of the <u>Twombly /</u>

<u>Phillips</u> standard. Wenglicki's only allegation regarding this claim is "At all times

material, Defendant breached the covenant of good faith and fair dealing for the reasons aforesaid (incorporated by reference)."  Compl. ¶ 74.  Wenglicki's statement is a legal conclusion.  The pleading rules and this circuit's caselaw require more.

### B. Claims against Tribeca and Franklin

### i. Count I: TILA / HOEPA

The Truth in Lending Act[3] (TILA) is a consumer protection statute that allows borrowers to rescind transactions when the lender "fails to deliver certain forms or to disclose important terms accurately."  Beach v. Ocwen Fed. Bank, 523 U.S. 410, 411 (1998).  TILA has a one-year statute of limitations.[4]

Wenglicki has alleged that he obtained a loan with Tribeca on October 29, 2005.  Compl. ¶¶ 49, 50.  This is the date on which the violations of TILA allegedly ocurred.  Wenglicki's complaint, however, was filed on October 29, 2007, two years afer the loan closing.  It is clear from the face of Wenglicki's complaint that his complaint was filed one year too late and his TILA claim is time-barred.

The Home Ownership Equity Protection Act (HOEPA) was enacted as an amendment to TILA and created a special class of regulated loans made at higher interest rates or with excessive costs and fees.[5]  HOEPA has the same one-year statute of

---

[3]15 U.S.C. § 1601, *et seq.*

[4]15 U.S.C. § 1640(e).

[5]15 U.S.C. §§ 1602(aa)(1), (3); 12 C.F.R. §§ 226.32(a)(1)(i), (ii).

limitations as TILA because it is an amendment to that statute.  In re Cmty. Bank of N. Va., 418 F.3d 277, 305 (3d Cir. 2005). Again, Wenglicki's complaint makes it clear that his HOEPA claims are a year too late and therefore time-barred.

Wenglicki seeks a rescission of his loan under TILA and HOEPA, but he does not identify which disclosures defendants failed to provide.  If the disclosures were provided, Wenglicki's right to rescind expired three business days after the last of the following events: consummation of the transaction, delivery to the consumer of the right to rescind, or delivery to the consumer of all material disclosures of the credit terms.[6]  If the disclosures were not provided, Wenglicki's right to rescind expired "three years after the date of consummation of the transaction or upon the sale of the property."  15 U.S.C. § 1635(f).  Therefore, this count will be dismissed.

### ii. Count II: RESPA

The Real Estate Settlement Procedures Act (RESPA) is another consumer disclosure statute that applies to federally related mortgage loans.  Under RESPA, borrowers can make a "qualified written request" (QWR) to any servicer regarding any aspect of their account or related escrows.  RESPA regulates the actions a servicer must

---

[6]15 U.S.C. §§ 1635(a), 1602(u); 12 C.F.R. §§ 226.23, 226.15(a)(3), 226.23(a)(3).

take after receiving a QWR[7] and prohibits fee splitting.[8]   Therefore, in order to have a RESPA claim, minimally there must be a servicer and QWR.

Wenglicki has not alleged that Tribeca is a servicer under RESPA.  Under RESPA, a loan "servicer" is the person responsible for "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of that loan."  12 U.S.C. §§ 2605(i)(2) - 2605(i)(3).  Therefore, Tribeca was not required to respond to the QWRs or requests to rescind.  Even Wenglicki's complaint alleges that Tribeca was the original lender while Franklin was the loan servicer.  Compl. ¶ 7.

Wenglicki must have made a QWR in order for Franklin to be liable under RESPA.  Wenglicki's amended complaint never states whether a QWR was ever sent.  In fact, Wenglicki's amended complaint states "To the extent a request has not been previously made by Plaintiff, Plaintiff here serves this complaint as a Qualified Written Request."  Compl. ¶ 58.  Wenglicki never alleges that he sent a QWR and even suggests that perhaps he never did.  For this reason, the RESPA claim against Franklin must be dismissed.  <u>Morilus v. Countrywide Home Loans</u>, No. 07-900, 2007 WL 1810676, 4

---

[7]12 U.S.C. § 2605(e)(2).  A QWR consists of two necessary items: (1) information to allow the servicer to identify the name and account of the borrower, and (2) a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

[8]12 U.S.C. § 2607(b).

(E.D. Pa. June 20, 2007) (stating that "since plaintiffs fail to allege that they submitted requests to defendant . . the plain language of the statute indicates that it cannot be held liable for the failure to respond to these inquiries").

With respect to RESPA's prohibited fee-splitting, Wenglicki merely alleges that he paid pre-paid finance charges that are "believed" to be neither "properly disclosed nor *bona fide* and *reasonable* under TILA/HOEPA, thus 'fee splitting'." Compl. ¶ 57. Wenglicki does not state with whom Tribeca split fees or what fees were split. Therefore, the RESPA claim against both defendants will be dismissed.

### iii. Count III: ECOA

The Equal Credit Opportunity Act (ECOA) requires that "within 30 days. . .after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." 15 U.S.C. § 1691. The regulations contemplate three types of actions that a creditor can take in response to an application for credit: approval, counteroffer[9] or adverse action.[10] When counteroffers or adverse actions are made, ECOA requires that the creditor notify the consumer within thirty days.

Therefore, in order for there to be an ECOA claim, there must, at the very least, be a creditor and an action of which the consumer was not made aware. Here, Franklin is a

---

[9]The relevant regulation defines a counteroffer as "to grant credit in a different amount or on other terms." 12 C.F.R. § 202.2(c)(1)(i).

[10] Adverse action is "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6).

servicer, not creditor (at least as alleged by Wenglicki) therefore there can be no ECOA claim against Franklin.  Further, Wenglicki has stated that he <u>was</u> aware of Tribeca's action with respect to his loan:  he states that he <u>received</u> the loan.  Therefore, Wenglicki's claim under ECOA that he was not made aware of Tribeca's action with respect to his loan application is inconsistent with the facts as he states them.  Therefore, Wenglicki has not stated an ECOA claim against any defendant.  This count of the complaint will be dismissed with prejudice.[11]

### iv. Count IV: CSA (against Tribeca only)

The Credit Services Act is a Pennsylvania statute that applies to credit services organizations.  Excluded from coverage by the CSA are

> "Any person organized, chartered or holding a license or authorization certificate to make loans or extensions of credit pursuant to the laws of the Commonwealth or the United States who is subject to regulation and supervision by an official or agency of the Commonwealth or the United States" or "Any bank, bank and trust company, trust company, savings bank, Federal savings and loan association or savings bank located in this Commonwealth or savings association or any subsidiary or affiliate of such institution whose deposits are eligible for insurance by the Federal Deposit Insurance Corporation, the Savings Association Insurance Fund of the Federal Deposit Insurance Corporation or the Pennsylvania Savings Association Insurance Corporation."

73 Pa. Stat. § 2182.

Wenglicki has withdrawn his CSA claim against Franklin.  Resp. at 16.  He argues

---

[11]Further, ECOA's statute of limitations is two years.  15 U.S.C. § 1691e(f); <u>Ordille v. United States</u>, 216 Fed. Appx. 160, 164-65 (3d Cir. 2007).  Any adverse action or counteroffer would have occurred prior to Wenglicki's loan closing on October 29, 2005.  He filed his complaint on October 27, 2007 which may be more than two years after the action occurred.

that he requires discovery to determine whether Tribeca is regulated by the CSA because it acted as both his originating lender and mortgage broker because it "ultimately sourc[ed] the loan to itself in its alter-ego capacity as a lender." This allegation sufficiently alleges a state-law claim under the CSA.

### v. Count VIII: UTPCPL

Wenglicki alleged that Tribeca and Franklin violated the Fair Credit Extension Uniformity Act (FCEUA), but then withdrew that claim in his omnibus response to the motions to dismiss (Document #41). He did not, however, withdraw his claim that the defendants violated the Uniform Trade Practices and Consumer Protection Law (UTPCPL) even though the only basis for that claim was that defendants FECUA violation was a *per se* violation of the UTPCPL. Wenglicki fails to state a UTPCPL claim because he has not alleged "with particularity the elements necessary to support a violation . . .as to a particular Defendant." Morilus, 2007 WL 1810676, 5. No actions by defendants that would result in a UTPCPL violation are alleged. A list of alternative sets of facts are reiterated. This claim should therefore be dismissed.

### vi. Count XI: Conspiracy and Aiding & Abetting

Under Pennsylvania common law, to plead a claim for civil conspiracy, Wenglicki must show that two or more persons "combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." Thompson Coal Co. v. Pike Coal

<u>Co.</u>, 488 Pa. 198, 211 (Pa. 1979). He must also show malice. <u>Id.</u>

In his amended complaint, Wenglicki devotes one sparse paragraph to this claim: "Defendants acted conspiratorially, in their design in concert, and/or aiding and abetting each other to perpetrate the harms and/or misconduct aforesaid." Compl. ¶ 75. This paragraph does not contain allegations sufficient to state a claim for conspiracy nor to put defendants on notice of the factual basis for this claim.

## IV. CONCLUSION

All three remaining counts against Avaya will be dismissed because Wenglicki failed to state a claim. The remaining count (Wenglicki's CSA claim in Count IV) against Tribeca is a state law claim. Therefore I will decline to exercise supplemental jurisdiction over the state law claim and dismiss it without prejudice to its filing in Pennsylvania state court.[12]

---

[12]"[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." <u>Borough of West Mifflin v. Lancaster</u>, 45 F.3d 780, 788 (3d Cir. 1995). Wenglicki has not stated any reason for this court to retain jurisdiction over his claim. He has the option of pursuing this claim in Pennsylvania state court and this court has the authority to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution ... (c)The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... (3) the district court has dismissed all claims over which it has original jurisdiction").